<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LINDA WALSH,** | 05-CV-5403 (WJM) |
|     **Plaintiff,** | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
|     **Defendant.** | |

Langton & Alter
Abraham S. Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
*Attorney for Plaintiff*

Kristina Cohn
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
*Attorney for Defendant*

**MARTINI, U.S.D.J.:**

**I.      INTRODUCTION**

       Plaintiff Linda Walsh brings this appeal pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of the denial of her application for Disability Insurance Benefits and Supplemental Security Benefits ("benefits") by the Commissioner of Social Security ("Commissioner"). After hearing Plaintiff's case on second remand, Administrative Law Judge ("ALJ") Richard De Steno ("ALJ De Steno") issued a written decision on August 11, 2003

holding that Plaintiff retained the residual functional capacity to do light work with some limitations and therefore was not entitled to benefits. The Appeals Council denied Plaintiff's request for review on September 21, 2005.

Plaintiff claims that the ALJ's decision was not supported by substantial evidence, specifically that the ALJ erred in determining that her hypertensive and cardiovascular conditions were not severe and he improperly determined Plaintiff's residual functional capacity. For the reasons below, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     CASE HISTORY

### A.     Factual Background

Plaintiff Linda Walsh was born in 1957 and completed school up to the tenth grade. Her relevant employment history included working as a waitress and as a bartender. (Tr. at 85.)[1] Plaintiff alleges that her disability began March 1997 as a result of her back condition, hypertension and cardiovascular condition. (Def. Br. at 2.) Plaintiff sought treatment for these conditions in June through August 1997 at a local clinic. (Tr. at 224-27.) She underwent a battery of tests starting in July 1997 and continuing through September 1997 including an MRI study and cardiovascular diagnostic tests and was subsequently examined by Dr. V. Patel (*Id.* at 229-70.) She underwent a second battery of tests in December 1997. (*Id.* at 294-298.) In January 1998 she underwent back surgery in order to remove a herniated disk. (*Id*. at 300.) Plaintiff received follow-up care and underwent another MRI study in May 1998. (*Id.* at 351-52.) Aside from Plaintiff's consulting physician's interrogatories from December 1999, the ALJ had to rely entirely on medical evidence dating back to May 1998 to make his determination

---

[1] The designation "Tr." refers to the administrative record.

about whether Plaintiff was disabled as she had not been in contact with her attorney or the Commissioner since before the first remand hearing in 2001. Because of her absence, Plaintiff's attorney stood in on her behalf at her first and second remand hearings. (*Id.* at 28-31, 50) In addition to her back surgery, Plaintiff's therapeutic treatment for her conditions consisted of several physical therapy sessions preceding her surgery and high blood pressure medication for her hypertensive and cardiovascular conditions. (*Id.* at 89, 225 and 287-289.)

### B.     Procedural Background

Plaintiff applied for DIB in September 1997, claiming that she was disabled and entitled to benefits from March 15, 1997 onward. (Pl. Br. at 1.) The application was denied by the initial examiner and again on reconsideration. (*Id.*) Plaintiff appeared at a hearing in November 1999 before ALJ Dennis O'Leary ("ALJ O'Leary"). (*Id.*) ALJ O'Leary issued a decision on March 21, 2000 denying her request for benefits and the Appeals Council subsequently remanded the matter for a new hearing because the decision was made without evaluating the opinions of two physicians, Dr. Mylod and a state agency medical consultant, and because the ALJ's finding on Plaintiff's RFC did not comport with the testimony of the vocational expert. (Pl. Br. at 1; Tr. at 152-53.) A new hearing was held before ALJ O'Leary in November 2001 and he again denied Plaintiff's request for benefits. (Pl. Br. at 1.) Plaintiff sought review again from the Appeals Council and in August 2002 it ordered a second remand. (Tr. at 167-68.) The Appeals Council noted that the ALJ again had not entered Dr. Mylod's interrogatories into the record and had not evaluated the opinion of the state agency consultant. Also, the Appeals Council noted that since the medical evidence on the record dated back four or more years, additional medical evidence was necessary to determine the nature and extent of Plaintiff's

impairments.  Finally, the Appeals Council noted that the ALJ failed to properly conduct and substantiate his RFC determination.  (*Id.*)  A third hearing was held in July 2003 before ALJ De Steno.  (Pl. Br. at 2.)  Plaintiff's attorney stood in on her behalf and ALJ De Steno, in spite of Plaintiff's attorney's objection, declared her to be a non-essential witness so that the hearing could proceed.[2]  (Tr. at 31-35.)  ALJ De Steno denied Plaintiff's request for benefits and the Appeals Council subsequently denied her request for review.  (Tr. at 6-8.)  Plaintiff now requests that this Court review the decision of the ALJ.

## III.    STANDARD OF REVIEW

The district court exercises plenary review over the ALJ's legal conclusions and is bound by the ALJ's factual findings if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance.")  Thus, the Court's inquiry is limited to whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ.  *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) ("Overall, the substantial evidence standard is a deferential standard of review.")

---

[2]  Plaintiff's presence was not required at her hearings; her attorney's presence was sufficient for the case to proceed.  20 C.F.R. § 404.957; *see also* Commissioner's Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-425(D), *available at* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-25.html (the version in effect through July 2005 is currently available at 1993 WL 643012).

 IV.    **FIVE-STEP DISABILITY DETERMINATION**

An ALJ considering a claim for disability benefits must apply a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a).  If the claimant is found to be engaged in substantial activity, the disability claim will be denied.  *Id.*  In step two, the ALJ must next determine whether the claimant is suffering from an impairment or combination of impairments that is "severe."  *Id.*; 20 C.F.R. § 404.1520(c).  If the claimant cannot show his impairment is "severe," he is ineligible for disability benefits.  20 C.F.R. § 404.1520(a).  However, if the claimant demonstrates a "severe" medical impairment, the ALJ must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability.[3]  20 C.F.R. § 404.1520(d).  If a match is found, the ALJ enters a finding of disability without considering other factors such as age, education, and work experience.  *Id.*  Conversely, if there is no match, the ALJ must proceed to steps four and five.  *Burnett*, 220 F.3d at 118.

In step four, the ALJ must decide if the claimant retains the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e)-(f).  At this step, the claimant has the burden of demonstrating his or her inability to perform past work.  *Burnett*, 220 F.3d at 118 (citation omitted).  If the claimant does not have the capacity to resume past work, the evaluation will continue to the fifth step.  *Id.*

---

[3]The Commissioner's list is located at Appendix 1 to 20 C.F.R. pt. 404, subpt. P.

At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(g); *Burnett*, 220 F.3d at 118. If the claimant cannot perform other work in the national economy, the ALJ must grant disability benefits. 20 C.F.R. § 404.1520(g).

## V. DISCUSSION

In this case, the ALJ found under step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 17.) Under step two, the ALJ concluded Plaintiff's herniated discs, radiculopathy and carpal tunnel conditions were severe but did not find Plaintiff's hypertensive and cardiovascular conditions to be severe. (*Id.*) Under step three however, the ALJ determined that Plaintiff's "severe" impairments did not meet or equal any of the impairments in the listings, thus requiring a residual functional capacity analysis. (*Id.*) After determining under step four that Plaintiff had the RFC to do light work with some limitations, the ALJ found that she was unable to perform any of her past relevant work. (*Id.* at 20-21 and 23.) Under step five, the ALJ inquired whether a person with Plaintiff's RFC, age, education and work experience could perform other available work in the national economy pursuant to 20 C.F.R. § 404.1520 (g). After consulting a vocational expert's opinion, the ALJ concluded that Plaintiff could adapt to other available work. (*Id.* at 20-23.) Thus, the ALJ concluded at step five of the analysis that Plaintiff was not disabled as defined by 20 C.F.R. § 404.1520 and 416.920, and therefore was not entitled to benefits.

### A.     The ALJ Improperly Determined that Plaintiff's Hypertension and Cardiovascular Condition were not Severe

The Plaintiff claims that the ALJ incorrectly found that her hypertensive and cardiovascular conditions were not severe within the meaning of the guidelines. (Pl. Br. at 11). The ALJ determines whether a claimant's impairment is severe under step two of the five-step sequential analysis. 20 C.F.R. § 404.1520. With respect to this step, the Social Security Administration ("SSA") defines a "severe" impairment in the negative by stating, "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The SSA defines "basic work activities" as abilities and aptitudes necessary to do most jobs, including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).

Despite the use of the word "severe," the Commissioner has explained that to pass step two of the analysis, an applicant must merely show something more than "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (*citing* S.S.R. 85-28, 1985 S.S.R. LEXIS 19, *6-7). The court in *McCrea* evaluated whether the claimant's neck, back and shoulder impairments were severe by inquiring whether the claimant's subjective complaints were corroborated by objective medical evidence and the claimant's treatment history for the impairments. In *McCrea*, the court made clear that "great care" must be used when reviewing an ALJ's decision to deny a plaintiff's application at step two: "The burden placed on an applicant at step two is not an exacting one . . . [a]ny doubt as to whether this

showing has been made is to be resolved in favor of the applicant." *McCrea*, 370 F.3d at 360. In short, "[t]he step-two inquiry is a de minimus screening device to dispose of groundless claims." *Id.* (citation omitted).

Applying these standards, the Court finds that the ALJ erred in finding Plaintiff's hypertensive and cardiovascular conditions as non-severe in step two of the analysis. Specifically, the Court notes that every examining physician whose report appears in the record agrees that Plaintiff suffered from hypertension and there is a substantial amount of objective medical evidence on the record to support Plaintiff's contention that her cardiovascular condition is severe. First, the treating physician at the local clinic where Plaintiff sought treatment recorded abnormally high blood pressure on multiple visits and subsequently prescribed high blood pressure medication. (Tr. at 225.) Second, Dr. Patel also diagnosed Plaintiff with hypertension and prescribed a high blood pressure medication. While he noted that her high blood pressure condition was "stable," he nonetheless advised a follow-up exam for the condition within two months. (*Id.* at 287.)

Third, diagnostic medical tests throughout the record corroborate Plaintiff's subjective complaints of numbness, chest pain and difficulty moving about resulting from Plaintiff's hypertensive and cardiovascular impairments. For example, Plaintiff stated in her first hearing that walking up and down the aisle in the grocery store caused her pain and her movement is so constrained by pain and discomfort and that she was unable to do certain household chores such as washing dishes. (Tr. at 96-97.) The results from the first battery of tests Plaintiff underwent in September 1997 indicated mild mitral regurgitation and trace aortic insufficiency. (*Id.* at 249.) An MRI study of Plaintiff's brain on the same day also corroborated Plaintiff's contention

that her hypertensive and cardiovascular conditions are severe.  While the physician who interpreted the brain MRI study stated that the abnormalities were unlikely to represent "ischemic changes" indicative of cardiovascular pathology, he could not rule this possibility out based only on this MRI study.  (*Id*. at 274).  Plaintiff underwent a second battery of tests in December 1997.  (*Id*. at 294-297).  Although the results were normal on a number of indices, the cardiologist nonetheless concluded that Plaintiff suffered from mild left ventricular hypertrophy, possible ANT pericardial effusion, mild mitral regurgitation and mild tricuspid regurgitation. (*Id*.).

Fourth, Plaintiff consistently sought and received treatment for her hypertensive and cardiovascular disorders.  Under the *McCrea* rule that a claimant must show only something more than a slight abnormality having even a minimal effect on an individual's ability to work, the extent to which a claimant seeks treatment for a condition offers corroborative support that the claimant's subjective complaint is not a groundless claim.  *See McCrea*, 370 F.3d at 361. Plaintiff's treatment history for these conditions as described above and throughout the record satisfies this rule.

Given these opinions, it is evident that Plaintiff suffered from hypertension and, at least to some degree, a resulting cardiovascular condition leading to some degree of limitation in her ability to work.  While the Court also notes that the record may not support a finding that these "severe" limitations prevented Plaintiff from working in any capacity during the period in question, such analysis is more appropriate for steps four and five.  For the purposes of the analysis at step two, the Court finds Plaintiff met her burden of showing an impairment "severe" enough to meet the de minimus standard articulated in *McCrea*.

**B.      The ALJ Improperly Determined Plaintiff's Residual Functional Capacity**

Plaintiff claims that the ALJ improperly discounted Dr. Albert G. Mylod's opinion in determining her RFC and failed to take into account medical evidence later introduced into the record.  (Pl. Br. At 13-17.)  In December 1999, Dr. Mylod evaluated Plaintiff's medical records and offered his expert opinion on her limitations based on the medical evidence in the record.  (*Id*. at 360-363.)  Dr. Mylod stated that, based on his interpretation of the medical evidence, Plaintiff could sit or stand for three hours out of an eight hour work day and had limited movement of her neck, arms, and hands.  (*Id*. at 362-63.)  He later testified as an expert witness at Plaintiff's first remand hearing.  (*Id*. at 57-65.)  The ALJ wrote in his decision that "no significant weight can be accorded to the functional assessment of Dr. Albert Mylod" and that Dr. Patel's assessment, made in September 1997, is "most worthy of probative weight."  (*Id*. at 20.)

In determining how credible an expert's medical opinion is, the ALJ is permitted to consider factors such as whether or not the expert examined the claimant, the nature and extent of the treatment relationship, the expert's area of specialization, the amount of support in the form of medical evidence, the explanation the expert provides to substantiate the opinion, and the consistency of the expert's opinion with the record as a whole.  20 C.F.R. § 404.1527 (d).  The ALJ has discretion to assign appropriate weight to medical testimony.  *Alexander v. Shalala*, 927 F.Supp 785, 795 (D.N.J. 1995).  However, when a conflict arises between expert opinions an ALJ must not discount an expert's opinion for no reason or for the wrong reason.  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Here, the ALJ provides three reasons for discounting Dr. Mylod's opinion. First, he points to the fact that Dr. Mylod was hired by Plaintiff to testify at the prior hearing and to answer interrogatories. (Tr. at 20.) However, this is not a factor set out for consideration in weighing expert opinions under 20 C.F.R § 404.1527(d). Second, the ALJ states that Dr. Mylod's opinion regarding Plaintiff's sitting, standing, and walking limitations is not supported by any medical evidence and characterizes Dr. Mylod's opinion regarding Plaintiff's head movement limitations as "extreme and unsupported." (Tr. at 20.) However, the ALJ points to no specific medical evidence in the record to support his discounting of Dr. Mylod's opinion of Plaintiff's physical limitations. Lastly, the ALJ discounts Dr. Mylod's opinion because he never examined Plaintiff. (*Id.*)

It is permissible to accord a greater weight to an examining physician's opinion over a non-examining physician's opinion. 20 C.F.R § 404.1527(d)(1). However, here the examining physician, Dr. Patel had formed his opinion on Plaintiff's limitations without the benefit of medical evidence that became available after his examination of Plaintiff; this new evidence was considered by Dr. Mylod. In *Cadillac v. Barnhart*, the court found "it was error for the ALJ to have favored medical opinions based on an incomplete record over those based on a complete record . . . ." *Cadillac v. Barnhart*, 84 Fed.Appx. 163, 169 (3d Cir. 2003). The ALJ may not elevate an opinion based on an incomplete record over an opinion based on a complete record, especially without explaining "why certain evidence has been accepted and why other evidence has been rejected." *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d 1983) (citation omitted).

Plaintiff underwent surgery and an additional MRI study after Dr. Patel already had offered his opinion on her physical limitations. While the surgery was seemingly successful

11

upon discharge (Tr. at 316-17), the post-surgery MRI study revealed more disc herniations and disc bulges than were present prior to surgery. (*Id.* at 59-61.) Dr. Mylod, who consulted the medical evidence on the record on behalf of Plaintiff after this MRI study, opined that, based on the post-surgery MRI study, Plaintiff's cervical spine problems combined with her carpal tunnel were "going to give her quite a bit of problems." (*Id.* at 62.) The information from this MRI study was not available to Dr. Patel when he evaluated Plaintiff's limitations as the study had not yet been performed. In light of this flaw, the ALJ's explanations for elevating Dr. Patel's opinion over Dr. Mylod's are inadequate.

Accordingly, this Court finds that it was error for the ALJ to elevate Dr. Patel's opinion over Dr. Mylod's opinion, which was based on the complete record. This is particularly true absent an adequate explanation of why, based on the relevant evidence in the record on the whole, he chose to do so. The Plaintiff's RFC should be re-determined, taking into account the proper weight that must be accorded to experts' opinions made on the basis of both an incomplete and complete record, and adequately explaining why certain evidence is accepted and other evidence rejected.

## VI.    CONCLUSION

For the foregoing reasons, this Court finds that the ALJ committed error by finding Plaintiff's hypertensive and cardiovascular conditions non-severe and in his determination of her residual functional capacity. Therefore, the Commissioner's decision denying Disability Insurance Benefits to Plaintiff Linda Walsh is **REVERSED** and the case is **REMANDED** with the instruction that the ALJ should find that Plaintiff's hypertensive and cardiovascular

conditions are severe and should re-evaluate her RFC in light of the standards outlined in this opinion. An appropriate Order accompanies this Opinion.

**Dated**: November 21, 2006

                                                     s/ William J. Martini
                                                   **William J. Martini, U.S.D.J.**